UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARK LOVELO,**

       **Plaintiff,**

       v.

**CLERMONT COUNTY SHERIFF'S OFFICE, et. al,**

       **Defendants.**

Case No. 1:23-cv-114

JUDGE DOUGLAS R. COLE

### OPINION AND ORDER

Plaintiff Mark Lovelo brought this § 1983 suit against several corrections officers, nurses, Sheriff Leahy (the Clermont County Sheriff), the Clermont County Sheriff's Office, Clermont County, and a healthcare company that contracts with Clermont County. (Compl., Doc. 1). He sued all of the individual defendants in both their individual and official capacities. (*Id.* at #4–5). The Complaint alleges that the corrections officers used excessive force by beating him when booking him in the county jail and the medical staff failed to intervene and ameliorate his injuries. (*See generally id.*).

Clermont County and the Clermont County Sheriff's Office now move to dismiss the claims against them, arguing that they were improperly joined, they do not have the capacity to be sued, and Lovelo has failed to plausibly state a claim for relief against them. (Doc. 10). For the reasons discussed below, the Court **GRANTS** the motion and **DISMISSES** the claims against Clermont County and the Clermont County Sheriff's Office.

## BACKGROUND

While the factual allegations in the Complaint are lengthy, the relevant facts to this Opinion and Order are few. On February 27, 2021, Lovelo was brought to the Clermont County jail as a pre-arraignment detainee. (Doc. 1, #6). He alleges that several officers used excessive force while searching him during the booking process by throwing him to the ground and punching him repeatedly. (*Id.*). Lovelo alleges that the officers attacked him twice—once during the initial booking process, then again several hours later. (*Id.* at #6–7). On top of that, Lovelo alleges that the nurses at the jail watched the first attack and then failed to perform necessary medical interventions after either attack, choosing instead to merely check his blood pressure and his restraints. (*Id.* at #6–9). He was eventually taken to the University of Cincinnati Medical Center, where he was diagnosed with internal bleeding, a grade 3 spleen laceration, five fractured ribs, a collapsed lung, and "a loss of consciousness causing mild cognitive-linguistic deficits." (*Id.* at #9).

After the incidents, none of the officers involved received reprimands from the Sheriff's Office. (*Id.* at #10). Southern Health Partners, the healthcare company which contracts with Clermont County to provide health services for detainees, also took no corrective or punitive action against the nurses involved. (*Id.*).

Lovelo eventually filed this lawsuit against the officers, the nurses, Southern Health Partners, the Clermont County Sheriff, the Clermont County Sheriff's Office, and Clermont County. (*Id.* at #1–2). He brings ten § 1983 claims, alleging violations of the Fourth and Fourteenth Amendments. (*Id.* at #11–18). Most relevant for present purposes, Count 9 alleges that, by failing to supervise and discipline the officers and

nurses, both the Clermont County Sheriff's Office (as to the officers) and Southern Health Partners (as to the nurses) had a policy and practice of deliberate indifference to detainees' constitutional rights. (*Id.* at #16). Despite naming Clermont County as a defendant, the Complaint does not state that Clermont County did anything but contract with Southern Health Partners. (*Id.* at #5–6). And Lovelo does not allege Clermont County had a policy or custom denying detainee's rights.

Clermont County and the Clermont County Sheriff's Office (County Defendants) moved to dismiss the claims against them pursuant to Federal Rules of Civil Procedure 17, 12(b)(6), and 21. (Doc. 10). Their principal argument is that neither is an entity capable of being sued under Ohio law, with an alternative argument that Lovelo has failed to state a claim for which relief can be granted against these two defendants. (*Id.* at #92–95). Because the Court finds the first argument convincing, it will not discuss whether Lovelo's substantive claims are plausible.

## LAW AND ANALYSIS

Despite the lack of a textual hook in Rule 12, "courts generally agree that a party may assert its lack of capacity to be sued in a Rule 12(b)(6) motion to dismiss." *Pipeline Prods., Inc. v. S&A Pizza, Inc.*, No. 4:20-cv-130, 2022 WL 584661, at *2 (W.D. Mo. Feb. 25, 2022) (collecting authorities); *see also* 5A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 1294 (4th ed. 2023). Federal Rule of Civil Procedure 17(b) governs a party's legal capacity to sue or be sued. That rule states that, aside from two exceptions that are not relevant to this case:

3

> Capacity to sue or be sued is determined as follows: (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile; (2) for a corporation, by the law under which it was organized; and (3) for all other parties, by the law of the state where the court is located.

Fed. R. Civ. P. 17(b). Here, the County Defendants are not individuals and, unlike municipalities, are not corporations either. *Estate of Fleenor v. Ottawa Cty.*, 208 N.E.3d 783, 786 (Ohio 2022). So, Rule 17(b)(3) directs the Court to look to the law of the state where it sits—here, Ohio—to determine a party's capacity to be sued.

And this same rule applies with full force to claims under § 1983. As the Sixth Circuit has explained:

> "§ 1983 does not change basic procedural rules permitting only 'juridical' entities to sue and be sued. Whether a governmental body has a separate legal existence allowing it to be sued in its own name generally turns on the law of the state that established the body. *See* Fed. R. Civ. P. 17(b)(3)(A); 6A Charles A. Wright et al., Federal Practice & Procedure § 1562, at 618–19 (3d ed. 2010); *see, e.g., Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). We thus have held that several different types of § 1983 defendants were not suable entities under the relevant state's law."

*Lopez v. Foerster*, No. 20-2258, 2022 WL 910575 (6th Cir. March 29, 2022). *See also, e.g., Carmichael v. City of Cleveland*, 571 Fed. App'x 426, 435 (6th Cir. 2014) ("However, as the district court correctly noted, federal courts have held that, under Ohio law, a county sheriff's office is not a legal entity that is capable of being sued."); *Petty v. Cty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007) ("[U]nder Ohio law, a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983."), overruled on other grounds by *Twombly*, 550 U.S. at 561-62; *El-Bey v. United States*, No. 1:21-CV-574, 2022 WL 394379, at *5 (S.D. Ohio Feb. 9, 2022), report and recommendation adopted, No. 1:21-CV-574, 2022 WL 2835003 (S.D. Ohio

4

July 20, 2022) ("Likewise, plaintiff's claims against the Clinton County Sheriff's Department should be dismissed because this defendant is not an entity capable of being sued.").

So state law—and in particular Ohio law—decides whether the two County Defendants are suable entities. Let's start with the County itself. Ohio law separates counties into three categories: chartered, alternative form of government, or unchartered. "Every county adopting a charter or an alternative form of government is a body politic and corporate … Such county is capable of suing and being sued." Ohio Rev. Code § 301.22; *Fleenor*, 208 N.E.3d at 786. Unchartered counties, on the other hand, are merely territorial divisions of the state. *Fleenor*, 208 N.E.3d at 786. They are not "vested with a single attribute of sovereignty" and, accordingly, cannot be sued in their own name as a separate entity. *Id.*; *See also* Ohio Rev. Code § 301.22. Instead, in cases against unchartered counties, litigants must sue the board of county commissioners, which does have the capacity to sue and be sued. *Fleenor*, 208 N.E.3d at 786 (citing Ohio Rev. Code § 305.12). Clermont County is not a chartered county. *See* "Local Government," https://ohio.gov/government/resources/local-government-rosters (last visited Dec. 19, 2023) (listing only Cuyahoga and Summit Counties as chartered counties). So Lovelo must sue the board, not the County itself.

Likewise, under Ohio law, a Sheriff's Office or Department is not subject to suit as a separate legal entity. *Smith v. Kelly*, 2012-Ohio-2547, ¶ 39 (2d Dist.); *Ciganik v. Kaley*, 2004-Ohio-6029, ¶ 40 (11th Dist.). *See also, e.g.*, *Carmichael*, 571 Fed. App'x 435 (applying rule in § 1983 case).

5

Based on straightforward application of Ohio law, then, the Court concludes that neither Clermont County nor the Clermont County Sheriff's Office is a juridical entity, *see Lopez supra*, that is capable of suing or being sued. Because they lack the requisite capacity to be sued, the Court must dismiss the claims against them.

Lovelo resists this conclusion, but in doing so he conflates sovereign immunity with capacity to be sued. He contends that *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), "allows suits against governmental entities based on how they adopt or implement policy." (Opp'n, Doc. 15, #120). Specifically, he argues that because *Monell* allows a governmental entity to be liable for a "custom," in addition to formal policies, that means that "that policy or custom need not be created through official legislative acts made by those with legal authority." (*Id.* at #121). "Therefore"—Lovelo argues—"even if the Court could take judicial notice that Clermont County and the Clermont County Sheriff's Office are not properly chartered to sue and be sued, *Monell* allows for relief." (*Id.*). Lovelo then cites a Southern District of Ohio case, *Stack v. Karnes*, 750 F. Supp. 2d 892 (S.D. Ohio 2010), in support of that proposition.

But *Monell* had nothing to say about capacity and very little to say about immunity. *Monell*'s central holding is that the word "person" in 42 U.S.C. § 1983 includes local governing bodies. *Monell*, 436 U.S. at 690. That merely means that Congress created a right of action which can be asserted against local governing bodies in general. But it does not mean that a given local governing body is a separate legal entity capable of being sued. On the immunity question, *Monell* also cited, in one footnote of the opinion, prior Supreme Court decisions establishing that counties,

6

insofar as they were not arms of the state, possessed no immunity under the Eleventh Amendment. *Id.* at 690 n.54. But once again, whether an entity is *immune* is distinct from whether it is a *legal entity* capable of being sued. In some states, counties may possess the capacity to be sued. In others, they may not. That depends on how the state is organized, not on § 1983. *See Lopez*, 2022 WL 910575, at *6 ("Whether a governmental body has a separate legal existence allowing it to be sued in its own name generally turns on the law of the state that established the body.").

Lovelo's cited authority, *Stack v. Karnes*, overlooked that distinction. The *Stack* court held that allowing a state to "defin[e] [its] own standards for the capacity of local governments to be sued," would functionally permit that state to "extend Eleventh Amendment immunity to municipalities, counties, and other local governments." 750 F. Supp. 2d at 898. And so, *Stack* stated, under *Monell* a county "is considered a person for purposes of § 1983 and the immunity afforded under [Ohio Rev. Code § 301.22] … is inapplicable." *Id.* at 899.

But as noted immunity and capacity are different concepts. Immunity provides a shield against suit based on the sovereign's status as a sovereign. It is an age-old doctrine that prevents liability from attaching despite (1) the state's status as a separate legal entity and (2) its wrongdoing. Capacity to sue and be sued, on the other hand, centers on whether a party exists as a cognizable, separate legal entity that can engage in legally binding relations and be held to account for legal wrongs. Whether a Butler County Metro Park, for example, can be sued in its own name is not a question of immunity, but of capacity. The same goes for an incompetent

7

individual or the neighborhood garden club. It is not that they can lay claim to an immunity defense, but rather that they are not subject to suit in the first instance.

The *Stack* court ignored these differences because, in its view, allowing a state to define who has the capacity to be sued would allow it to extend its immunity beyond the bounds of federal law. But consider where that road would lead. To start, following *Stack* would mean disregarding the plain language of Federal Rule of Civil Procedure 17, which commands this Court to reference state law when determining a party's capacity. Beyond that, though, the concern about extending immunity would be flawed even if that were not the case. If a county is an arm of the state such that a judgment against the county would be a judgment against the state, the county is *already* immune from suit under the Eleventh Amendment. *Monell*, 436 U.S. at 690 n.54. The state need not further confer immunity by also expressly rendering those counties incapable of being sued.

Moreover, even if a state *were* trying to "immunize" its counties by defining their capacity to be sued, the Court cannot resolve that problem in this case. Rather, that would need to be addressed through revisions to Federal Rule of Civil Procedure 17—an issue left to the United States Supreme Court, in the first instance, followed by congressional approval.

At bottom, the concerns that *Monell* addressed (the scope of the § 1983 cause of action and a local government's sovereign immunity) are distinct from a party's capacity, so Rule 17 and *Monell* do not conflict. And as they do not conflict, the Court must apply Rule 17 and look to state law when determining each County Defendant's

capacity to be sued. Here, under Ohio state law, Clermont County and the Clermont County Sheriff's Office lack the capacity to be sued.

## CONCLUSION

Because the two County Defendants lack the capacity to be sued, and because that is not a defect that can be cured by amendment, the Court **GRANTS** the County Defendants' motion to dismiss (Doc. 10) and **DISMISSES** the claims against Clermont County and the Clermont County Sheriff's Office **WITH PREJUDICE**. The Court **DIRECTS** the Clerk to **TERMINATE** Defendants Clermont County and the Clermont County Sheriff's Office from the Court's docket. Lovelo is free to move to join the Clermont County Board of Commissioners under Rule 20 in their stead. *See* Ohio Rev. Code § 305.12.

**SO ORDERED.**

December 21, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**